FILED

2014 Aug-27  PM 02:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ALICELEENA M. SMITH, | } | |
| | } | |
| Plaintiff, | } | |
| | } | Civil Action No. |
| v. | } | 12:12-CV-03900-WMA |
| | } | |
| SOCIAL SECURITY | } | |
| ADMINISTRATION, COMMISSIONER, | } | |
| | } | |
| Defendant. | } | |

## MEMORANDUM OPINION

Aliceleena M. Smith ("Smith") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of a final decision denying her application for Disability Insurance Benefits from July 1, 2009, to December 31, 2009.  Smith timely pursued and exhausted her administrative remedies before the Social Security Administration.  An administrative law judge ("ALJ") issued a decision unfavorable to her that became the Commissioner's final decision when the Appeals Council denied review.  Smith asserts on appeal that the ALJ's decision should be reversed because his conclusions are inconsistent with applicable law and his findings do not have substantial supporting evidence.  More specifically, Smith contends that the ALJ disregarded her treating physician's opinion without good cause and found that her subjective complaints of pain lacked full credibility without substantial evidence.  As explained below, the court finds that the Commissioner's final decision must be affirmed because the ALJ had good cause to disregard the treating

physician's opinion and had substantial evidence to support his credibility assessment.

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must be "disabled." Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of evaluating entitlement to disability benefits, a "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Social Security regulations outline a five-step process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If the ALJ finds that the claimant engages in substantial gainful activity, the claimant cannot claim disability, and the inquiry ends. 20 C.F.R. § 404.1520(b). Second, if the claimant is found not to have engaged in substantial gainful activity, the ALJ must determine whether the

claimant has a medically determinable impairment or a combination of medical impairments that significantly limit the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant cannot successfully claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or equals the criteria for an impairment in the Listing of Impairments. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If such criteria are found, the claimant must be declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not meet the requirements for being declared disabled under the third step, the ALJ may still find disability under the final two steps of the process. Before undertaking these steps, the ALJ must determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite the impairment. 20 C.F.R. § 404.1520(e). When determining a claimant's RFC, the ALJ considers all evidence relevant to impairment.

In the fourth step, the ALJ determines whether the claimant's RFC allows the claimant to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is found capable of performing past relevant work, the claimant cannot successfully claim disability. *Id.* If the ALJ finds the claimant unable to perform past relevant work, the process continues to the fifth step. 20 C.F.R. § 404.1520(a)(4)(v). The fifth and final step requires the

ALJ to determine whether the claimant is able to perform any other work commensurate with the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g).  Vocational expert ("VE") testimony is required when a claimant cannot perform the full range of work at a particular exertional level or has a non-exertional impairment such as pain, fatigue, or mental illness. *Foot v. Chater*, 67 F.3d 1553, 1558-59 (11th Cir. 1995).

In the present case, the ALJ applied the five-step disability analysis and determined that Smith was not disabled based on the fifth step.  The ALJ found that Smith had not engaged in substantial gainful activity during the time at issue, had severe impairments that did not meet or equal a listed impairment (arthritis of the knees, degenerative disc disease, fibromyalgia, hypertension, and obesity), and could not engage in past relevant work. R. 14.  However, the ALJ concluded that Smith had the RFC to perform sedentary work as defined in 20 C.F.R. § 416.1567(a), assuming that, at her option, she could sit or stand and that she could "engage in frequent, but not repetitive, manipulative work with the bilateral hands." R. 14-18.  Based on this RFC and also on VE testimony, the ALJ found that Smith could perform other jobs in the national economy that exist in significant numbers and, accordingly, that Smith was not "disabled." R. 25-26.

**FACTUAL BACKGROUND**

Smith claims that her disability began on July 1, 2009, and seeks Disability Insurance Benefits through December 31, 2009, the date through which her earnings record shows that she acquired sufficient quarters of coverage to remain insured ("date last insured"). R. 12.  She was forty-two years old on the date last insured. R. 25.  She completed high school and some college and has past relevant work as a nurse's aide. R. 25, 105.

Regarding the medical evidence, this section focuses on the evidence related to the issues on appeal, specifically, Smith's severe impairments of arthritis of the knees, degenerative disc disease, fibromyalgia, hypertension (high blood pressure), and obesity. *See* R. 14.[1]  Although the appeal only concerns benefits for July 1, 2009, through December 31, 2009 ("insured period"), the ALJ considered as context Smith's medical records from before and after that period, i.e., her "longitudinal"[2] medical history, so this section summarizes that medical history as well. R. 20-24.

---

[1] Smith does not contest the ALJ's findings with respect to her non-severe impairments that did not more than minimally limit her ability to work, so the testimony and medical evidence on those topics are not relevant to this appeal. *See* Doc. 8; R. 14-18.

[2] According to Merriam-Webster, the medical definition of "longitudinal" is "involving the repeated observation or examination of a [] subject[] over time with respect to one or more study variables (as general health, the state of a disease, or mortality). . . ." MERRIAM-WEBSTER, http://www.merriam-webster.com/dictionary/longitudinal (last visited Aug. 26, 2014).

*Before the Insured Period*

In an early record considered by the ALJ, Smith underwent an examination by an orthopedist, Kenneth Vandervoort, M.D., in July 2006 for ongoing problems in her knees and lower back. R. 286. Dr. Vandervoort noted that Smith had obesity and hypertension. *Id.* His examination revealed that her knees were mildly tender to palpation with good range of motion and that her lumbar spine had mild limitation in range of motion and tenderness. *Id.* Dr. Vandervoort diagnosed lumbar spine degenerative disc disease and mild to moderate arthritis in both knees. *Id.* He recommended that Smith be restricted to low physical demand work with limited standing, walking, and stair climbing, and that she lose weight. *Id.*

Smith began seeing a rheumatologist, Dr. Vishala Chindalore, M.D., at some point prior to January 2007. R. 20. At an appointment with Dr. Chindalore in April 2007, Smith reported pain in both knees and some back pain. R. 394. Dr. Chindalore found osteoarthritic changes in the knees and judged the back pain stable. R. 394-95. He gave her Hyalgan knee injections. *Id.* Smith was referred to a cardiologist, who recommended in June 2007 that Smith, among other things, walk five days a week for twenty minutes. R. 477. At a follow-up appointment with Dr. Chindalore in September 2007, he found osteoarthritic changes of Smith's hands and knees and some spasm in her back, and he assessed her knee pain and back pain as stable. R. 392-93. By Smith's November 2007 appointment, Dr. Chindalore judged that her back pain had remained

stable and her knee pain had improved, although her left knee had a painful range of motion. R. 393.  By her September 2008 visit, her left knee's range of motion had improved, but her lumbar spine flexion had become painful. R. 391.  Smith used Lidoderm patches for knee pain and was prescribed Amrix, a muscle relaxer, for back pain. R. 21.  She followed up with Dr. Chindalore in November 2008, at which time the examination revealed painful range of motion of multiple joints, painful lumbar spine flexion, back spasm, abnormal gait, and a few positive trigger points. R. 389.  Dr. Chindalore found that osteoarthritis in Smith's knees "limits her with her ability to work." *Id.*  A later appointment in January 2009 revealed that Celebrex had "helped her a lot" and, while she still had knee pain, she had good range of motion in her joints. R. 388.

In 2009, several months before the alleged onset date, Smith visited a primary care doctor and was admitted to the hospital. The primary care appointment took place in January 2009.  The primary care doctor noted that Smith continued to ride her bike three times a week for twenty minutes and had seen improvement in her muscle tone. R. 297.  Smith was admitted to the hospital in April 2009 with chest pain. R. 337-38.  Among other things, she was advised to exercise and to follow a low-cholesterol and low-sugar diet. *Id.*

Smith had an appointment with Dr. Chindalore on June 23, 2009, just before the alleged onset date of July 1, 2009. R. 21.  Smith reported that she "is doing about the same" and "actually has a lot

of pain in her joints." R. 544.   Dr. Chindalore's examination revealed some knee tenderness, anserine bursa pain, a normal gait, and good range of motion in both hands and wrists. *Id.*   Her low back appeared benign with lumbar spine flexion within normal limits. *Id.*   Dr. Chindalore also noted that Smith's hypertension was under good control. *Id.*   He recommended that she take two Aleve twice daily and take vitamin D supplements. R. 21.

*During the Insured Period*

After the alleged onset date of July 1, 2009, Smith had a follow-up appointment with Dr. Chindalore on August 20, 2009. R. 544.   His examination revealed a normal gait and good range of motion in her hands, wrists, and knees. *Id.*   Her low back continued to appear benign with her lumbar spine flexion within normal limits. *Id.*   Dr. Chindalore assessed Smith's knee pain as "better" and her leg pain as "improved." *Id.*   Smith returned to see Dr. Chindalore on October 22, 2009, and he found that her knee pain continued to be "better," although he did note some knee osteoarthritic changes. R. 684.[3]

Smith visited the primary care doctor again on September 22,

---

[3] At the October 2009 appointment, Smith also had some paresthesias and was given samples of Lyrica for it. R. 684.  The medical definition of "parethesia" is "a sensation of pricking, tingling, or creeping on the skin having no objective cause and usually associated with injury or irritation of a sensory nerve or nerve root." MERRIAM-WEBSTER, http://www.merriam-webster.com/medical/paresthesia (last visited Aug. 26, 2014).  Dr. Chindalore did not connect paresthesia to one of the severe impairments claimed by Smith and/or acknowledged by the ALJ, so this complaint does not affect the disability determination.

2009,[4] and on November 10, 2009. R. 597, 616.  In September 2009, Smith said that she felt tired for one month after changing her blood pressure medicine but was "feeling well other than fatigue, and [her] blood pressure creeping up." R. 597.  She indicated that she got extremely tired climbing stairs but that she could exercise "ok" on her exercise bike. *Id.*  At the November 2009 appointment, the doctor noted some tenderness in Smith's back but found no decreased range of motion. R. 21.  Smith also confirmed that she had been using her exercise bike. R. 616.

Smith's final appointment during the insured period was with Dr. Chindalore on December 17, 2009.  At that appointment, Smith noted that "[s]he still hurts quite a bit." R. 682.  Examination revealed some osteoarthritic changes of the hands and knees and some spasm in her back and neck. *Id.*  Lumbar spine flexion remained within normal limits and her gait remained normal. *Id.*  Both hands, wrists, and knees had good range of motion. *Id.*  Dr. Chindalore did not assess whether Smith's knee or back pain had improved, remained stable, or deteriorated. *See id.*  He changed her medication, but apparently due to side effects from her previous medication. *Id.*  He also noted that her hypertension was stable. *Id.*

*After the Insured Period*

Smith visited her primary care doctor in March 2010, reporting

---

[4] Smith saw Dr. Robert L. Cater on all primary care visits to C.A.R.E.S. Immediate Family Care Occupational Medicine, except that she saw Dr. Michael G. Gaines on August 21, 2009. R. 583-604.

throbbing left knee pain that had lasted for two weeks and worsened with certain weather and with bending. R. 593.   The doctor found arthritis of the left knee and continued her current medications. R. 22, 627.

At an appointment with Dr. Chindalore also in March 2010, he described Smith as "doing reasonably well on the current therapy" but noted that "she is having a lot of problems with her shoulders and back." R. 683.   His examination showed a few positive fibromyalgia trigger points, some back spasm, lumbar spine flexion within normal limits, and a normal gait. *Id.*   Smith's hands, wrists, and knees had good range of motion. *Id.*   Dr. Chindalore assessed her back pain as stable and decided to continue the current therapy for osteoarthritis. *Id.*

Smith returned to her primary care doctor in May 2010, complaining of burning pain in her right knee lasting for three weeks. R. 591.   The doctor observed that Smith limped and recommended that she take Aleve and apply Icy-Hot for right knee tendonitis. R. 22, 628.   Four months later, in September 2010, Smith had an appointment with her primary care doctor and complained of lower back discomfort and leg pain, ongoing for two to three weeks and worse with walking. R. 585.   The doctor assessed the pain as reflecting arthritis and refilled her pain medication. R. 22, 637.   At her last primary care appointment of record in January 2011, Smith reported right knee pain with the most recent pain onset one week prior, at a 10 on a pain scale of 1 to 10. R.

583.   She said that she was not resting well and woke up from the pain. R. 584.   Smith requested and received a referral for a MRI to further investigate her knee problems. R. 583.   The doctor noted that she had a history of degenerative disc disease but her lower back was not giving her problems now. *Id.*

Smith's final two appointments of record with Dr. Chindalore occurred in March 2011.   Dr. Chindalore notes at the earlier March appointment that he had not seen Smith for almost a year. R. 680. At that appointment, Smith claimed that "[s]he is hurting all over." *Id.*   She said that she had a meniscal tear in the right knee, for which she had a knee brace and which "hurt[] her a lot at night." *Id.*   Dr. Chindalore's examination showed a normal gait and good range of motion in her hands, wrists, and right knee. *Id.* Smith's low back appeared benign, and her lumbar spine flexion was within normal limits. *Id.*   She was continued on her current pain medication, Cymbalta, prescribed by the primary care doctor. R. 680, *supra* n. 4.   At her appointment in late March 2011, Smith reported that she "was doing much better" on the 30 mg of Cymbalta but she started feeling nervous when she increased to 60 mg of Cymbalta. R. 680.   Dr. Chindalore's examination noted a few positive fibromyalgia trigger points and some osteoarthritic changes of the hands and knees. R. 681.   Smith had good range of motion in both hands, wrists, and knees. *Id.*

After Smith's March 2011 appointments with Dr. Chindalore, he

wrote an opinion letter dated April 8, 2011. R. 651.  In the letter, he said that she "has established diagnoses of severe osteoarthritis, back pain, knee pain, myalgias, chronic muscle spasms, anemia, neutropenia, and fibromyalgia.  Due to her multiple medical problems Ms. Smith is now totally and permanently disabled." *Id.*

The final piece of pertinent medical evidence is Smith's testimony at the video hearing before the ALJ.[5] *See* R. 12, 22-23. At the hearing, Smith said that she cannot sit or stand for too long due to her pain. R. 22.  She reported problems in both hands due to arthritis, with stiffening on some days, although she can usually open and close them. *Id.*  She estimated that she typically lies down for three to four hours every day due to fatigue. R. 22-23.  Later in the hearing, she said that she lies down for four to five hours per day. R. 23.

## DISCUSSION

This court's sole function is to determine whether substantial evidence supports the ALJ's findings of fact and whether the ALJ employed the proper legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*,

---

[5] In her brief, Smith adopted the ALJ's recitation of her testimony as true and correct. Doc. 8 at 2.

363 F.3d 1155, 1158 (11th Cir. 2004).  This court may not decide the facts anew, re-weigh the evidence, or substitute its judgment for that of the ALJ. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  Even if this court should find that the preponderance of evidence weighs against the ALJ's decision, the court must affirm the decision if it is supported by substantial evidence. *Id.*

Unlike the deferential standard used in evaluating the ALJ's factual findings, the ALJ's conclusions of law are not presumptively valid. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The court must reverse the decision if the ALJ failed "to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

Smith raises two issues on this appeal: (I) whether the ALJ properly weighed the opinion letter dated April 8, 2011, from her treating rheumatologist, Dr. Chindalore; and (II) whether the ALJ properly weighed Smith's credibility in assessing her subjective complaints of pain.  The court addresses these two issues in turn.

## I.    Treating Rheumatologist's Opinion Letter

Smith argues that the ALJ improperly disregarded the opinion letter dated April 8, 2011, from her treating rheumatologist in making the RFC determination.  Regulations require that a treating

13

physician's opinion be given controlling weight if well supported "by medically acceptable clinical and laboratory diagnostic techniques" and not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).   In the Eleventh Circuit, "the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citations omitted).   To show such good cause, the ALJ must clearly articulate his reasons for rejecting the treating physician's opinion. *Id.*; *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1176 (11th Cir. 2011).

Smith's treating rheumatologist, Dr. Chindalore, wrote a letter on April 8, 2011, stating that she "has established diagnoses of severe osteoarthritis, back pain, knee pain, myalgias, chronic muscle spasms, anemia, neutropenia, and fibromyalgia. Due to her multiple medical problems Ms. Smith is now totally and permanently disabled." R. 651.   The ALJ discussed this letter and gave as grounds for according it no weight that it purports to make a disability determination reserved to the Commissioner; that it lists diagnoses while "fail[ing] to specify any functional limitations that might support the disability rating"; and that it does not clearly refer to the insured period.[6] R. 24.   The court

---

[6] Defendant argues that the ALJ also gave Dr. Chindalore's opinion letter no weight because it was inconsistent with the doctor's treatment notes from Smith's insured period. Doc. 10 at 12.   The ALJ did not explicitly give this reason, however, and the court considers only the

finds that the opinion letter's failure to specify functional limitations and its unclear time referent gave the ALJ a good reason to accord it no weight.

The ALJ had grounds to give **less** weight to Dr. Chindalore's opinion letter because it constituted an opinion on the ultimate determination reserved to the Commissioner.  Doctors' opinions are not medical opinions with controlling weight when they are determinations reserved to the Commissioner, particularly on whether a person is disabled or unable to work. 20 C.F.R. §§ 404.1527(d), 927(d).  However, such opinions must still be considered. SSR 96-5p, 61 Fed. Reg. 34,471, 34,472 (1996).

That the opinion letter only listed impairments without describing how they limit Smith's ability to work more seriously undermines the opinion letter's utility.  The severity of any impairment is measured for disability purposes "in terms of its effect upon [the] ability to work." *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)); *see also* 20 C.F.R. § 404.1520(d)-(g) ("Your impairment(s) must prevent you from making an adjustment to any other work.").  The Eleventh Circuit has rejected challenges to RFC determinations based solely on a person **having** a particular impairment. *Id.*  "The mere existence of these impairments does not reveal the extent to which they limit her

---

reasons that the ALJ actually gave. *See Lewis*, 125 F.3d at 1440.

ability to work or undermine the ALJ's determination." *Id.* The conclusory way that Dr. Chindalore listed Smith's impairments before writing his assessment that she was totally and permanently disabled gave the ALJ good cause to accord little or no weight to the opinion letter.

Even more problematic is Dr. Chindalore's wording in the opinion letter that Smith "is **now** totally and permanently disabled." R. 654. Attributing to "now" its natural meaning, the letter reads as an opinion that Smith was totally and permanently disabled as of the letter's date of April 8, 2011——which has little relevance to determining whether Smith was disabled during the insured period more than a year earlier. *Wilson v. Apfel*, 179 F.3d 1276, 1278-79 (11th Cir. 1999) (per curiam); *Douglas v. Comm'r of Soc. Sec.*, 486 Fed. Appx. 72, 75-76 (11th Cir. 2012) (per curiam) (unpublished). Although Smith correctly notes that Dr. Chindalore could have based his assessment on more recent appointments than those in June and August 2009, this argument weighs even more against the opinion referring to the insured period. Smith visited Dr. Chindalore in March 2010 and twice in March 2011. Why would Dr. Chindalore write a letter in April 2011 assessing Smith's condition as of July 2009 through December 2009 without explicitly referring to that time period and instead stating that Smith "is **now** totally and permanently disabled?" The ALJ reasonably concluded that the opinion letter did not unambiguously or even

likely refer to the insured period and, therefore, accorded it no weight.

The ALJ considered several problematic aspects of Dr. Chindalore's opinion letter and clearly articulated his reasons for giving it no weight. *See* R. 24.  The court finds that the ALJ's decision was reasonable and supported by substantial evidence in light of the conclusory nature of the opinion letter and the improbability that it referred to Smith's condition during the insured period. *See Winschel*, 631 F.3d at 1176.

## II.   **Smith's Subjective Complaints of Pain**

Smith contends on appeal that the ALJ did not properly consider her subjective complaints of pain when determining her RFC and her disability status.  The ALJ found that Smith's subjective complaints of pain supported the RFC of sedentary work with a sit/ stand option and a restriction on repetitive manipulative work with her hands. R. 22.  However, he found her subjective complaints of pain "not fully credible" to the extent that she alleged more severe functional limitations during the insured period. *Id.*

A "pain standard" applies when the claimant tries to establish disability through her subjective complaints of pain. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  Under this standard, a claimant testifying about her pain must show "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising

from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted).   The parties in the present case implicitly proceed under the option requiring evidence confirming the severity of Smith's alleged pain, as neither party contends that any one of Smith's conditions is so severe that it can reasonably be expected to give rise to the alleged pain without confirmation. *See id.*; R. 20-24; Doc. 8 at 8-10.

In assessing the claimant's subjective complaints of pain, the ALJ may decide that the claimant's testimony is not credible so long as the ALJ "articulate[s] explicit and adequate reasons for doing so." *Holt*, 921 F.2d at 1223 (quotation omitted).   The ALJ should consider the claimant's daily activities, symptoms, types and dosages of medications, and other treatments. *Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005); 20 C.F.R. § 404.1529(c)(3). Although the ALJ need not address every piece of evidence, the ALJ must consider the claimant's "medical condition as a whole" when assessing her credibility, and the ALJ's credibility conclusion "as a whole" must be supported by substantial evidence. *Dyer*, 395 F.3d at 1210-11.   If the ALJ's decision is supported by clear reasons and substantial evidence, the court may not disturb the credibility determination or re-weigh the related evidence. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995).   The court finds that the ALJ expressed clear reasons for not finding Smith's pain testimony

18

fully credible and had substantial supporting evidence for those reasons.

The ALJ provided three primary reasons for not finding Smith's pain testimony fully credible, considering both her longitudinal medical history and her doctors' functionality assessments. First, the ALJ noted that Smith was advised to exercise and that she successfully did so during the insured period. R.23. Second, the ALJ observed that Dr. Chindalore's treatment notes during the insured period show improvement in Smith's knee and leg pain and did not make significant findings as to her hands. *Id.* Third, the ALJ found some support for the RFC in one doctor's earlier functionality assessment, and no more recent opinion credibly undermined the RFC determination. R. 23-24. Smith contends that the ALJ did not have substantial evidence for his adverse credibility determination based on any of these reasons.

(1) The ALJ found Smith's pain testimony not fully credible in part because she was advised to exercise and she successfully exercised during the insured period. More specifically, the ALJ referred to a cardiologist's recommendation in June 2007 that Smith walk five times per week, R. 477., and a hospital doctor's recommendation in April 2009 that she exercise, R. 337-38. The ALJ also referenced treatment notes showing that Smith successfully used her exercise bike. R. 22. Smith reported in January 2009 that she rode her bike three times a week for twenty minutes. R. 297. Smith also stated at a November 2009 appointment, in the middle of

19

the insured period, that she had been using her exercise bike. R. 616.[7]  The ALJ inferred that the treating doctors did not consider Smith's pain so debilitating that it precluded limited exercise, and the fact that she engaged in such exercise supported that inference. R. 23.  Smith argues that the ALJ impermissibly "played doctor" and made "independent [medical] findings" by attributing significance to the exercise recommendations and Smith's exercise routine. Doc. 8 at 9 (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).  Smith also points out that none of the treatment notes indicate that the doctors disbelieved her pain symptoms. *Id.*

The court would hesitate if the ALJ had based his credibility determination solely on the exercise recommendations and Smith's exercise routine, but the ALJ specifically qualified that "[b]y itself, the claimant's ability to exercise for short periods might not indicate her capacity for the sedentary position described in this decision." R. 22.  Only after considering the other two factors did the ALJ conclude that he did not find Smith's subjective complaints of pain fully credible. *See* R. 21-23. As for "playing doctor," the ALJ necessarily must draw conclusions from medical records and reconcile conflicting evidence as part of deciding the RFC. 20 C.F.R. §§ 404.1529(a), (c)(4).  The ALJ considered Smith's ability to exercise immediately after noting her

---

[7]   The ALJ does not reference Smith's September 2009 appointment when she indicated that she got extremely tired climbing stairs but that she could exercise "ok" on her bike. R. 597.

claim of July 22, 2009, that she needed to hold onto a cart to do any shopping. R. 22, 212.   Juxtaposing this statement with the exercise recommendations and her exercise routine is not unreasonable, and the ALJ did not rely on this factor alone for his adverse credibility decision.

(2)   The ALJ heavily weighed in his credibility determination the treatment notes from before and during the insured period that showed improvement in Smith's knee and leg pain but did not make significant findings as to her hands. R. 22.   Smith counters that her condition actually had not improved, that the record contained numerous instances when she had complained of pain, and that the ALJ ignored the longitudinal medical history.   As an initial matter, the ALJ incorrectly referred to Smith's August 20, 2009, appointment as her last appointment of record with Dr. Chindalore. In fact, she also had appointments with him during the insured period on October 22, 2009, and December 17, 2009, and after the insured period in March 2010 and in March 2011.   As explained below, the omission of these treatment notes does not undermine the ALJ's credibility determination.

For his credibility determination, the ALJ focused on the change in Smith's condition as described in Dr. Chindalore's treatment notes from her January, June, and August 2009 appointments.   Previously, at her November 2008 appointment, examination revealed painful range of motion of multiple joints, painful lumbar spine flexion, back spasm, abnormal gait, and a few

positive trigger points. R. 389.  By the January 2009 appointment, Smith still had knee pain but she had good range of motion in her joints and she stated that Celebrex had "helped her a lot." R. 388. Smith reported at her June 23, 2009, appointment that she was "doing about the same" and "actually has a lot of pain in her joints." R. 544.  Her examination revealed some knee tenderness, anserine bursa pain (knee area)[8], a normal gait, and good range of motion in her hands and wrists. *Id.*  The ALJ emphasized the August 20, 2009, appointment at which Dr. Chindalore found Smith's knee pain "better" and her leg pain "improved." R. 544.  She had a normal gait, lumbar spine flexion within normal limits, and good range of motion in her hands, wrists, and knees. *Id.*

The treatment notes for the two appointments with Dr. Chindalore during the insured period **not** considered by the ALJ do not differ significantly.  Smith returned to see Dr. Chindalore on October 22, 2009. R. 684.  He found that her knee pain continued to be "better," although he did note some knee osteoarthritic changes. *Id.*  At the appointment on December 17, 2009, Dr. Chindalore did not assess whether Smith's knee, leg, and back pain had improved, remained stable, or deteriorated. *See* R. 682.  Examination revealed some osteoarthritic changes of her hands and knees and some spasm

---

[8] Anserine bursa is a fluid-filled sack between tendons and the tibial collateral ligament of the knee joint. DICTIONARY.COM, http://dictionary.reference.com/browse/anserine+bursa, http://dictionary.reference.com/browse/bursa?s=t (last visited Aug. 21, 2014).

in her back and neck, but her gait stayed normal, her lumbar spine flexion remained within normal limits, and she had good range of motion in her hands, wrists, and knees. *Id.* Dr. Chindalore did change Smith's medication, but apparently because of side effects that she had experienced on the previous medication. *Id.* The December 2009 treatment notes suggest more conservative improvement than the August 2009 treatment notes, but they do not undermine the ALJ's conclusion that Smith's knee and leg pain had improved shortly before and during the insured period.[9]

Smith emphasizes that she complained of pain at the appointments with Dr. Chindalore that the ALJ discussed, both before and during the insured period. The ALJ explicitly considered Smith's complaints and did not find them fully credible, primarily because they conflicted with Dr. Chindalore's assessment that Smith's condition and pain had improved by August 2009 (and by October 2009).[10] R. 22-24. Although Smith disagrees with the ALJ's conclusion, the ALJ had a responsibility to weigh the totality of

---

[9] Defendant argues that the ALJ considered Dr. Chindalore's conservative treatment regimen in determining Smith's credibility. Doc. 10 at 6-7. However, the ALJ only **explicitly** referred to Dr. Chindalore's "progression of treatment" once, as a reason to disregard his November 2008 functionality assessment and in the context of Smith's condition improving. R. 23-24. The court only reviews the reasons that the ALJ actually gave. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

[10] The ALJ did not doubt Smith's credibility because of a **lack** of corroborating medical evidence, an impermissible inference in the Eleventh Circuit for fibromyalgia, although not for Smith's other conditions. *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). Rather, the ALJ based his decision on inconsistencies between Smith's testimony and the medical evidence, which relates predominantly to her knee, leg, and back pain. *See* R. 22-24.

23

the evidence, including to what extent Dr. Chindalore's medical opinions conflicted with Smith's pain testimony. *See* 20 C.F.R. §§ 404.1529(a), (c)(4) ("Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence").  The ALJ reasonably gave more weight to Dr. Chindalore's judgment and had substantial evidence to find Smith's inconsistent pain testimony not fully credible.

When arguing that the ALJ did not consider her longitudinal medical history, Smith references several appointments that occurred after the insured period. Doc. 8 at 10.  The ALJ considered these later appointments when determining that Smith had severe impairments, *see* R. 22, but not when assessing the credibility of Smith's complaints of pain for the insured period, *see* R. 22-24.  The ALJ properly did not include the treatment notes from after the insured period.  The Eleventh Circuit has explained that medical opinions relating to time periods after the insured period are not probative of whether the claimant was "disabled" **during** the insured period. *Wilson v. Apfel*, 179 F.3d 1276, 1278-79 (11th Cir. 1999) (per curiam); *Carrol v. SSA*, 453 Fed. Appx 889, 892 (11th Cir. 2011); *Douglas v. Comm'r of Soc. Sec.*, 486 Fed. Appx. 72, 75-76 (11th Cir. 2012) (per curiam); *but see B o y d  v . Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983), *superseded on other*

*grounds by* 42 U.S.C. § 423(d)(5) (unless claimant began seeing the sole treating physician after the insured period). If the treatment notes from Smith's 2010 and 2011 appointments indeed indicate that she was in poor condition and had significant pain, such records could indicate that her condition had deteriorated; they do not necessarily mean that she was in that condition throughout the insured period. *Carrol*, 453 Fed. Appx. at 75-76.

(3) In judging the credibility of Smith's pain testimony, the ALJ also considered whether any medical assessments of Smith's functionality credibly opposed or supported the RFC. The ALJ found that Dr. Vandervoort's assessment from July 2006, although well before the insured period, was consistent with the RFC. R. 23. Dr. Vandervoort recommended that Smith be restricted to low physical demand work with limited standing, walking, and stair climbing, which is consistent with the RFC of sedentary work with a sit-stand option. *Id.* As for Dr. Chindalore's November 2008 assessment that osteoarthritis in Smith's knees "limits her with her ability to work," R. 389, the ALJ accorded it little weight because the assessment was "vague" and because the November 2008 treatment notes show far more serious findings than the notes from the insured period, R. 23-24. In November 2008, Smith had painful range of motion of multiple joints, painful lumbar spine flexion, back spasm, abnormal gait, and a few positive trigger points. R. 389. In contrast, on August 20, 2009, she had good range of motion in her hands, wrists, and knees, a lumbar spine flexion within

normal limits, a normal gait, "better" knee pain, and "improved" leg pain. R. 544.  Accordingly, the ALJ did not find the November 2008 assessment applicable to Smith's condition during the insured period. R. 24.  The ALJ disregarded Dr. Chindalore's April 2011 opinion letter because, as discussed in Section I above, it purported to make a determination reserved to the Commissioner, listed diagnoses without explaining functional limitations, and did not clearly refer to the insured period. R. 24.  Thus, the ALJ found that the July 2006 assessment was consistent with the RFC and that no later assessment undermined it.

The ALJ provided several explicit reasons for his determination that Smith's subjective complaints of pain during the insured period were not fully credible.  The ALJ considered Smith's "medical condition as a whole," including the progression of her treatment and symptoms, her daily activities, and her doctors' functionality assessments. *See Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005); 20 C.F.R. § 404.1529(c)(3).  Despite Smith's disagreement with his decision, the ALJ did have "such relevant evidence as a reasonable person would accept as adequate to support [the] conclusion" that Smith's pain testimony was not credible to the extent that it conflicted with her doctors' findings and the RFC. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Smith argues that the evidence supports the opposite conclusion, but such an argument misconstrues this court's role. Regardless of whether the evidence also supports a different

26

conclusion, this court cannot re-weigh the evidence or disturb the ALJ's credibility decision so long as the ALJ applied the correct legal analysis, provided clear reasons, and supported his decision with substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995).  The ALJ has satisfied this burden.

**CONCLUSION**

The court concludes that the ALJ applied the proper legal standards and had substantial evidence to support his determination that Smith was not disabled during the insured period. Accordingly, the Commissioner's final decision is due to be affirmed.  An appropriate, separate order will be entered.

DONE this 27th day of August, 2014.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE